1 TRACY L. WILKISON
Acting United States Attorney
2 CHRISTOPHER D. GRIGG
Assistant United States Attorney
3 Chief, National Security Division
MARK TAKLA (Cal. Bar No. 218111)
4 Assistant United States Attorney
Acting Chief, Terrorism and Export Crimes Section
5     United States Attorney's Office
      411 West Fourth Street, Suite 8000
6     Santa Ana, California 92701
      Telephone:  (714) 338-3591
7     Facsimile:  (714) 338-3561
      Email:      mark.takla@usdoj.gov
8
Attorneys for Plaintiff
9 UNITED STATES OF AMERICA

10                  UNITED STATES DISTRICT COURT

11            FOR THE CENTRAL DISTRICT OF CALIFORNIA

12 UNITED STATES OF AMERICA,          No. SA CR No. 16-00120-JLS

13          Plaintiff,                PLEA AGREEMENT FOR DEFENDANT
                                      LETICIA BALCETA SANCHEZ
14            v.

15 LETICIA BALCETA SANCHEZ,

16          Defendant.

17

18      1.   This constitutes the plea agreement between LETICIA BALCETA

19 SANCHEZ ("defendant") and the United States Attorney's Office for the

20 Central District of California (the "USAO") in the above-captioned

21 case.  This agreement is limited to the USAO and cannot bind any

22 other federal, state, local, or foreign prosecuting, enforcement,

23 administrative, or regulatory authorities.

24                      DEFENDANT'S OBLIGATIONS

25      2.   Defendant agrees to:

26           a.   At the earliest opportunity requested by the USAO and

27 provided by the Court, appear and plead guilty to count two of the

28 indictment in United States v. Leticia Balceta Sanchez, SA CR No. 16-

00120-JLS, which charges defendant with Mail Fraud in violation of 18 U.S.C. § 1341.

b.   Not contest facts agreed to in this agreement.

c.   Abide by all agreements regarding sentencing contained in this agreement.

d.   Appear for all court appearances, surrender as ordered for service of sentence, obey all conditions of any bond, and obey any other ongoing court order in this matter.

e.   Not commit any crime; however, offenses that would be excluded for sentencing purposes under United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not within the scope of this agreement.

f.   Be truthful at all times with the United States Probation and Pretrial Services Office and the Court.

g.   Pay the applicable special assessment at or before the time of sentencing unless defendant has demonstrated a lack of ability to pay such assessments.

h.   Authorize the USAO to obtain a credit report immediately upon defendant's entry of a guilty plea.

i.   Consent to the USAO inspecting and copying all of defendant's financial documents and financial information held by the United States Probation and Pretrial Services Office.

j.   Complete the Financial Disclosure Statement on a form provided by the USAO and, within 30 days of defendant's entry of a guilty plea, deliver the signed and dated statement, along with all of the documents requested therein, to the USAO by either email at usacac.FinLit@usdoj.gov or mail to the USAO Financial Litigation Section at 300 N. Los Angeles St., Suite 7516, Los Angeles, CA 90012.

2

k.    Agree that all court appearances, including her change of plea hearing and sentencing hearing, may proceed by video-teleconference ("VTC") or telephone, if VTC is not reasonably available, so long as such appearances are authorized by Order of the Chief Judge 20-043 or another order, rule, or statute.  Defendant understands that, under the United States Constitution, the United States Code, and the Federal Rules of Criminal Procedure (including Rules 11, 32, and 43), she may have the right to be physically present at these hearings.  Defendant understands that right and, after consulting with counsel, voluntarily agrees to waive it and to proceed remotely.  Defense counsel also joins in this consent, agreement, and waiver.  Specifically, this agreement includes, but is not limited to, the following:

i.    Defendant consents under Section 15002(b) of the CARES Act to proceed with his change of plea hearing by VTC or telephone, if VTC is not reasonably available.

ii.   Defendant consents under Section 15002(b) of the CARES Act to proceed with his sentencing hearing by VTC or telephone, if VTC is not reasonably available.

iii.  Defendant consents under 18 U.S.C. § 3148 and Section 15002(b) of the CARES Act to proceed with any hearing regarding alleged violations of the conditions of pretrial release by VTC or telephone, if VTC is not reasonably available.

l.    Agree to be present within the United States during any change or plea and sentencing hearings.  Defendant also agrees to complete any period of home detention and supervised release in the United States.

1     3.    Defendant understands that the government obtained

2  additional material in this investigation that defendant has not been

3  shown.  In exchange for the government's obligations under this

4  agreement, defendant gives up any right he may have had to review the

5  additional material, regardless of whether it is arguably exculpatory

6  or inculpatory, and further agrees to waive any argument that the

7  withholding of this material caused defendant's guilty pleas to be

8  not knowing or involuntary.  The government agrees not to use at

9  sentencing any of the withheld material without providing it to

10  defendant.

THE USAO'S OBLIGATIONS

12     4.    The USAO agrees to:

13          a.    Not contest facts agreed to in this agreement.

14          b.    Abide by all agreements regarding sentencing contained

15  in this agreement.

16          c.    Once defendant returns a signed copy of the plea

17  agreement to the government, the government will request withdrawal

18  of the arrest warrant and red notice, and issue a summons for

19  defendant to appear for her initial appearance.

20          d.    At the time of sentencing, move to dismiss the

21  remaining counts of the indictment as against defendant.  Defendant

22  agrees, however, that at the time of sentencing the Court may

23  consider any dismissed charges in determining the applicable

24  Sentencing Guidelines range, the propriety and extent of any

25  departure from that range, and the sentence to be imposed.

26          e.    At the time of sentencing, provided that defendant

27  demonstrates an acceptance of responsibility for the offense up to

28  and including the time of sentencing, recommend a two-level reduction

4

in the applicable Sentencing Guidelines offense level, pursuant to U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an additional one-level reduction if available under that section.

f.   Recommend that defendant be sentenced to a term of probation with a condition or combination of conditions that includes home detention with electronic monitoring instead of imprisonment for the period of time equal to the low end of the applicable Sentencing Guidelines range, provided that the offense level used by the Court to determine that range is a level 16 or higher.

<u>NATURE OF THE OFFENSE</u>

5.   Defendant understands that for defendant to be guilty of the crime charged in count two, that is, Mail Fraud, in violation of Title 18, United States Code, Section 1341, the following must be true: (1) defendant knowingly devised or participated in a scheme or plan to defraud, or a scheme or plan for obtaining money or property by means of false or fraudulent pretenses, representations, or promises; (2) the statements made or facts omitted as part of the scheme were material, that is, they had a natural tendency to influence, or were capable of influencing, a person or entity to part with money or property; (3) defendant acted with the intent to defraud, that is, the intent to deceive and cheat; and (4) defendant used, or caused to be used, the mails to carry out or attempt to carry out an essential part of the scheme.

<u>PENALTIES AND RESTITUTION</u>

6.   Defendant understands that the statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Section 1341, is: 20 years of imprisonment; a three-year period of supervised release; a fine of $250,000 or twice the gross gain or

gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

7.   Defendant understands that defendant will be required to pay full restitution to the victim(s) of the offenses to which defendant is pleading guilty.  Defendant agrees that, in return for the USAO's compliance with its obligations under this agreement, the Court may order restitution to persons other than the victim(s) of the offenses to which defendant is pleading guilty and in amounts greater than those alleged in the count to which defendant is pleading guilty.  In particular, defendant agrees that the Court may order restitution to any victim of any of the following for any losses suffered by that victim as a result: (a) any relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with the offense to which defendant is pleading guilty; and (b) any counts dismissed pursuant to this agreement as well as all relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with those counts.  The parties currently believe that the applicable amount of restitution is approximately $160,100.00 but recognize and agree that this amount could change based on facts that come to the attention of the parties prior to sentencing.

8.   Defendant agrees that any and all fines and/or restitution ordered by the Court will be due immediately.  The government is not precluded from pursuing, in excess of any payment schedule set by the Court, any and all available remedies by which to satisfy defendant's payment of the full financial obligation, including referral to the Treasury Offset Program.

9.   Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject

to various restrictions and requirements.  Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

10.  Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. Defendant understands that she is pleading guilty to a felony and that it is a federal crime for a convicted felon to possess a firearm or ammunition.  Defendant understands that the conviction in this case may also subject defendant to various other collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case and suspension or revocation of a professional license.  Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty plea.

11.  Defendant and counsel have discussed the fact that, and defendant understands that, if defendant is not a United States citizen, the conviction in this case makes it practically inevitable and a virtual certainty that defendant will be removed or deported from the United States.  Defendant may also be denied United States citizenship and admission to the United States in the future. Defendant understands that while there may be arguments that defendant can raise in immigration proceedings to avoid or delay

removal, removal is presumptively mandatory and a virtual certainty in this case. Defendant further understands that removal and immigration consequences are the subject of a separate proceeding and that no one, including his/her attorney or the Court, can predict to an absolute certainty the effect of his/her conviction on his/her immigration status. Defendant nevertheless affirms that he/she wants to plead guilty regardless of any immigration consequences that his/her plea may entail, even if the consequence is automatic removal from the United States.

FACTUAL BASIS

12. Defendant admits that defendant is, in fact, guilty of the offense to which defendant is agreeing to plead guilty. Defendant and the USAO agree to the statement of facts provided below and agree that this statement of facts is sufficient to support a plea of guilty to the charge described in this agreement and to establish the Sentencing Guidelines factors set forth in paragraph 14 below but is not meant to be a complete recitation of all facts relevant to the underlying criminal conduct or all facts known to either party that relate to that conduct.

Beginning in or around 2008 or 2009, and continuing to on or about July 2014, defendant, knowingly and with the intent to defraud, participated in a scheme to defraud Empire Blue Cross, Blue Cross Blue Shield of Michigan, Aetna, and other health care benefit programs as to material matters, and to obtain money and property from Empire Blue Cross, Blue Cross Blue Shield of Michigan, Aetna, and other health care benefit programs by means of materially false and fraudulent pretenses, representations, and promises, and the concealment of material facts.

Specifically, defendant was a marketer for Princess Cosmetic Surgery also known as ("aka") Vista Surgical Center, aka Empire Surgical Center (collectively referred to as "Vista"), located in Orange, California.  H.N. ("H.N."), and A.K were the operators of Vista.  VI NGUYEN ("NGUYEN") and THERESA FISHER ("FISHER") were employees at and consultants for Vista.  As a marketer at Vista, defendant referred patients to Vista who received free or discounted cosmetic surgery if the patients underwent unnecessary functional procedures that could be billed to the patient's health insurance. If a patient underwent three functional procedures – typically an endoscopy ("EGD"), colonoscopy, and cystoscopy - which were paid for by the patient's health insurance, then the patient could receive a cosmetic surgery – such as a breast augmentation or liposuction - for $500; or if a patient underwent only two functional procedures, then the patient could receive a cosmetic surgery for $900.  The more functional procedures the patient underwent, the bigger the discount he or she would receive.  Most patients came to Vista for plastic surgery; most patients did not originally complaint of medical problems until they were seen and coached by Vista employees.

Defendant, FISHER, and NGUYEN coached patients to tell doctors false symptoms to support unnecessary functional procedures. Defendant knew that the unnecessary functional procedures were billed to insurance companies, such as Empire Blue Cross, Blue Cross Blue Shield of Michigan, Aetna, and other health care benefit programs, and that the insurance companies sent reimbursement checks by mail to Vista.

Defendant coached patients E.D., P.H., and G.G. to tell Vista doctors false symptoms, so that the doctors would order unnecessary

cystoscopies, vaginal slings, colonoscopies, and EGDs for the patients.  At the time defendant coached the patients, defendant knew that the patients were not experiencing those symptoms.  Defendant knew that the patients would undergo unnecessary functional procedures, and that Vista would bill the insurance companies for those procedures.  For the transactions identified in the indictment, Vista billed the insurance companies a total of $178,234 and the insurance companies payed $160,100 to Vista.

Defendant understood that the above scheme was illegal and fraudulent and that the scheme defrauded the insurance companies of money..  The following are six of numerous mailings that defendant caused to be made in executing the scheme, on or about the following dates:

| COUNT | DATE MAILED | ITEM MAILED |
|-------|-------------|-------------|
| TWO | 12/16/2011 | Check no. 082957002 from Aetna to Vista in the amount of $26,450.47 for a cystoscopy on E.D. |
| THREE | 12/20/2011 | Check no. 0000038586961 from Empire Blue Cross Blue Shield to P.H. in the amount of $8,873.80 for an EGD on P.H. |
| FOUR | 12/21/2011 | Check no. 083038507 from Aetna to Vista in the amount of $35,690.34, of which $17,989.05 was for a vaginal sling on E.D. |
| FIVE | 12/26/2012 | Check no. 089400031 from Aetna to Empire in the amount of $10,691.26 for a colonoscopy on E.D. |
| SIX | 12/26/2012 | Check no. 853703041 from Blue Cross Blue Shield of Michigan to G.G. in the amount of $22,030.63 for a vaginal sling on G.G. |
| SEVEN | 7/31/2013 | Check no. 854245024 from Blue Cross Blue Shield of Michigan to G.G. in the amount of $27,260.85 for a cystoscopy on G.G. |

Defendant, FISHER, and NGUYEN were paid a "commission" or kickback for each functional procedure a referred patient underwent at Vista, between $250 to $500 depending on the functional procedure. Defendant told H.N. and A.K. about commissions Vista owed to her. Defendant received between $40,000 and $45,000 in commissions for

referring patients to Vista for unnecessary functional procedures.
Defendant also received free cosmetic surgery.

In September and October 2014, V.K. told defendant that the FBI
attempted to interview her.  Defendant told V.K. not to call the FBI
back.  She also told V.K. to lie to the FBI, specifically that V.K.
should not admit to knowing about cosmetic surgery being performed at
Vista, that V.K. paid cash for cosmetic procedures, that V.K. had the
symptoms necessitating the diagnostic procedures, and that V.K.
should say "I don't know" if asked whether H.N. was the owner.
Defendant knew that she was telling V.K. to lie to the FBI and that
these statements were material to the FBI's investigation.

In late 2015, the FBI attempted to interview defendant and left
a business card at defendant's residence.  In 2016, defendant sent
two letters accusing an FBI special agent of violating defendant's
civil rights and requesting monetary damages in the amount $3
million.  One of these letters made it appear, falsely, that
defendant had recorded a lien against the FBI special agent.  In
January 2017, defendant sent the FBI special agent a "bill" for
damages in the amount of $4.2 million.  Defendant intended to
intimidate and harass the FBI special agent with these letters.
Defendant's actions in telling V.K. to lie and to sending harassing
letters to the FBI case special constituted obstruction of justice.

SENTENCING FACTORS

13.  Defendant understands that in determining defendant's
sentence the Court is required to calculate the applicable Sentencing
Guidelines range and to consider that range, possible departures
under the Sentencing Guidelines, and the other sentencing factors set
forth in 18 U.S.C. § 3553(a).  Defendant understands that the

1   Sentencing Guidelines are advisory only, that defendant cannot have

2   any expectation of receiving a sentence within the calculated

3   Sentencing Guidelines range, and that after considering the

4   Sentencing Guidelines and the other § 3553(a) factors, the Court will

5   be free to exercise its discretion to impose any sentence it finds

6   appropriate up to the maximum set by statute for the crime of

7   conviction.

8        14.   Defendant and the USAO agree to the following applicable

9   Sentencing Guidelines factors:

10  | Base Offense Level: | 7 | U.S.S.G. § 2B1.1(a)(1) |

11  Specific Offense
    Characteristics

12  | [Greater than $150,000 loss]: | +10 | U.S.S.G. § 2B1.1(b)(1)(F) |

13  | Obstruction: | +2 | U.S.S.G. § 3C1.1 |

14  | Acceptance of Responsibility: | -3 | U.S.S.G. § 3E1.1 |

15  | Total Offense Level: | 16 | |

16  The USAO will agree to a two-level downward adjustment for acceptance

17  of responsibility (and, if applicable, move for an additional one-

18  level downward adjustment under U.S.S.G. § 3E1.1(b)) only if the

19  conditions set forth in paragraph 3(d)) are met and if defendant has

20  not committed, and refrains from committing, acts constituting

21  obstruction of justice within the meaning of U.S.S.G. § 3C1.1, as

22  discussed below.  Subject to paragraph 25 below, defendant and the

23  USAO agree not to seek, argue, or suggest in any way, either orally

24  or in writing, that any other specific offense characteristics,

25  adjustments, or departures relating to the offense level be imposed.

26  Defendant agrees, however, that if, after signing this agreement but

27  prior to sentencing, defendant were to commit an act, or the USAO

28  were to discover a previously undiscovered act committed by defendant

prior to signing this agreement, which act, in the judgment of the USAO, constituted obstruction of justice within the meaning of U.S.S.G. § 3C1.1, the USAO would be free to seek the enhancement set forth in that section and to argue that defendant is not entitled to a downward adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1.  Defendant understands that there is no agreement as to defendant's criminal history or criminal history category.

15.  Defendant and the USAO reserve the right to argue for a sentence outside the sentencing range established by the Sentencing Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).

<u>WAIVER OF CONSTITUTIONAL RIGHTS</u>

16.  Defendant understands that by pleading guilty, defendant gives up the following rights:

a.  The right to persist in a plea of not guilty.

b.  The right to a speedy and public trial by jury.

c.  The right to be represented by counsel -- and if necessary have the Court appoint counsel -- at trial.  Defendant understands, however, that, defendant retains the right to be represented by counsel -- and if necessary have the Court appoint counsel -- at every other stage of the proceeding.

d.  The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

e.  The right to confront and cross-examine witnesses against defendant.

1      f.   The right to testify and to present evidence in
2  opposition to the charges, including the right to compel the
3  attendance of witnesses to testify.

4      g.   The right not to be compelled to testify, and, if
5  defendant chose not to testify or present evidence, to have that
6  choice not be used against defendant.

7      h.   Any and all rights to pursue any affirmative defenses,
8  Fourth Amendment or Fifth Amendment claims, and other pretrial
9  motions that have been filed or could be filed.

10                <u>WAIVER OF APPEAL OF CONVICTION</u>

11     17.  Defendant understands that, with the exception of an appeal
12  based on a claim that defendant's guilty plea was involuntary, by
13  pleading guilty defendant is waiving and giving up any right to
14  appeal defendant's conviction on the offense to which defendant is
15  pleading guilty.  Defendant understands that this waiver includes,
16  but is not limited to, arguments that the statute to which defendant
17  is pleading guilty is unconstitutional, and any and all claims that
18  the statement of facts provided herein is insufficient to support
19  defendant's plea of guilty.

20         <u>LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE</u>

21     18.  Defendant agrees that, provided the Court imposes a term of
22  imprisonment within or below the range corresponding to an offense
23  level of 16 and the criminal history category calculated by the
24  Court, defendant gives up the right to appeal all of the following:
25  (a) the procedures and calculations used to determine and impose any
26  portion of the sentence; (b) the term of imprisonment imposed by the
27  Court; (c) the fine imposed by the Court, provided it is within the
28  statutory maximum; (d) to the extent permitted by law, the

                              14

constitutionality or legality of defendant's sentence, provided it is within the statutory maximum; (e) the amount and terms of any restitution order, provided it requires payment of no more than $160,100; (f) the term of probation or supervised release imposed by the Court, provided it is within the statutory maximum; and (g) any of the following conditions of probation or supervised release imposed by the Court: the conditions set forth in General Order 20-04 of this Court; the drug testing conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); and the alcohol and drug use conditions authorized by 18 U.S.C. § 3563(b)(7).

19.   The USAO agrees that, provided (a) all portions of the sentence are at or below the statutory maximum specified above and (b) the Court imposes a term of imprisonment within or above the range corresponding to an offense level of 16 and the criminal history category calculated by the Court, the USAO gives up its right to appeal any portion of the sentence, with the exception that the USAO reserves the right to appeal the following: (a) the amount of restitution ordered if that amount is less than $160,100.

<u>RESULT OF WITHDRAWAL OF GUILTY PLEA</u>

20.   Defendant agrees that if, after entering a guilty plea pursuant to this agreement, defendant seeks to withdraw and succeeds in withdrawing defendant's guilty plea on any basis other than a claim and finding that entry into this plea agreement was involuntary, then (a) the USAO will be relieved of all of its obligations under this agreement; and (b) should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then (i) any applicable statute of limitations will be tolled between the date of defendant's signing of this

1  agreement and the filing commencing any such action; and

2  (ii) defendant waives and gives up all defenses based on the statute

3  of limitations, any claim of pre-indictment delay, or any speedy

4  trial claim with respect to any such action, except to the extent

5  that such defenses existed as of the date of defendant's signing this

6  agreement.

7  <u>RESULT OF VACATUR, REVERSAL OR SET-ASIDE</u>

8      21.  Defendant agrees that if the count of conviction is

9  vacated, reversed, or set aside, both the USAO and defendant will be

10  released from all their obligations under this agreement.

11  <u>EFFECTIVE DATE OF AGREEMENT</u>

12      22.  This agreement is effective upon signature and execution of

13  all required certifications by defendant, defendant's counsel, and an

14  Assistant United States Attorney.

15  <u>BREACH OF AGREEMENT</u>

16      23.  Defendant agrees that if defendant, at any time after the

17  signature of this agreement and execution of all required

18  certifications by defendant, defendant's counsel, and an Assistant

19  United States Attorney, knowingly violates or fails to perform any of

20  defendant's obligations under this agreement ("a breach"), the USAO

21  may declare this agreement breached.  All of defendant's obligations

22  are material, a single breach of this agreement is sufficient for the

23  USAO to declare a breach, and defendant shall not be deemed to have

24  cured a breach without the express agreement of the USAO in writing.

25  If the USAO declares this agreement breached, and the Court finds

26  such a breach to have occurred, then: (a) if defendant has previously

27  entered a guilty plea pursuant to this agreement, defendant will not

28

1 | be able to withdraw the guilty plea, and (b) the USAO will be
2 | relieved of all its obligations under this agreement.

3 |     24.  Following the Court's finding of a knowing breach of this
4 | agreement by defendant, should the USAO choose to pursue any charge
5 | that was either dismissed or not filed as a result of this agreement,
6 | then:

7 |         a.  Defendant agrees that any applicable statute of
8 | limitations is tolled between the date of defendant's signing of this
9 | agreement and the filing commencing any such action.

10 |         b.  Defendant waives and gives up all defenses based on
11 | the statute of limitations, any claim of pre-indictment delay, or any
12 | speedy trial claim with respect to any such action, except to the
13 | extent that such defenses existed as of the date of defendant's
14 | signing this agreement.

15 |         c.  Defendant agrees that: (i) any statements made by
16 | defendant, under oath, at the guilty plea hearing (if such a hearing
17 | occurred prior to the breach); (ii) the agreed to factual basis
18 | statement in this agreement; and (iii) any evidence derived from such
19 | statements, shall be admissible against defendant in any such action
20 | against defendant, and defendant waives and gives up any claim under
21 | the United States Constitution, any statute, Rule 410 of the Federal
22 | Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal
23 | Procedure, or any other federal rule, that the statements or any
24 | evidence derived from the statements should be suppressed or are
25 | inadmissible.

<u>COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES</u>

<u>OFFICE NOT PARTIES</u>

25.  Defendant understands that the Court and the United States Probation and Pretrial Services Office are not parties to this agreement and need not accept any of the USAO's sentencing recommendations or the parties' agreements to facts or sentencing factors.

26.  Defendant understands that both defendant and the USAO are free to: (a) supplement the facts by supplying relevant information to the United States Probation and Pretrial Services Office and the Court, (b) correct any and all factual misstatements relating to the Court's Sentencing Guidelines calculations and determination of sentence, and (c) argue on appeal and collateral review that the Court's Sentencing Guidelines calculations and the sentence it chooses to impose are not error, although each party agrees to maintain its view that the calculations in paragraph 14 are consistent with the facts of this case.  While this paragraph permits both the USAO and defendant to submit full and complete factual information to the United States Probation and Pretrial Services Office and the Court, even if that factual information may be viewed as inconsistent with the facts agreed to in this agreement, this paragraph does not affect defendant's and the USAO's obligations not to contest the facts agreed to in this agreement.

27.  Defendant understands that even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions different from those agreed to, and/or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty plea, and defendant will remain bound to

18

fulfill all defendant's obligations under this agreement.  Defendant understands that no one -- not the prosecutor, defendant's attorney, or the Court -- can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be within the statutory maximum.

NO ADDITIONAL AGREEMENTS

28.  Defendant understands that, except as set forth herein, there are no promises, understandings, or agreements between the USAO and defendant or defendant's attorney, and that no additional promise, understanding, or agreement may be entered into unless in a writing signed by all parties or on the record in court.

PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

29.  The parties agree that this agreement will be considered part of the record of defendant's guilty plea hearing as if the entire agreement had been read into the record of the proceeding.

AGREED AND ACCEPTED

UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF
CALIFORNIA

TRACY L. WILKISON
Acting United States Attorney

_____          _____
MARK TAKLA                                Date
Assistant United States Attorney

_____          _____
LETICIA BALCETA SANCHEZ                   Date
Defendant

_____          _____
JENNIFER R. GOLDMAN                       Date
Attorney for Defendant Leticia
Balceta Sanchez

1  fulfill all defendant's obligations under this agreement.  Defendant
2  understands that no one -- not the prosecutor, defendant's attorney,
3  or the Court -- can make a binding prediction or promise regarding
4  the sentence defendant will receive, except that it will be within
5  the statutory maximum.

6                    NO ADDITIONAL AGREEMENTS

7      28.  Defendant understands that, except as set forth herein,
8  there are no promises, understandings, or agreements between the USAO
9  and defendant or defendant's attorney, and that no additional
10  promise, understanding, or agreement may be entered into unless in a
11  writing signed by all parties or on the record in court.

12            PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

13      29.  The parties agree that this agreement will be considered
14  part of the record of defendant's guilty plea hearing as if the
15  entire agreement had been read into the record of the proceeding.

16  AGREED AND ACCEPTED

17  UNITED STATES ATTORNEY'S OFFICE
    FOR THE CENTRAL DISTRICT OF
18  CALIFORNIA

19  TRACY L. WILKISON
    Acting United States Attorney
20
21  *Mark Takla*                                28 Apr 2021
                                                Date
22  MARK TAKLA
    Assistant United States Attorney
23  *Leticia B. Sanchez*                        4/27/2021
                                                Date
24  LETICIA BALCETA SANCHEZ
    Defendant
25                                              April 28, 2021
                                                Date
26  JENNIFER R. GOLDMAN
    Attorney for Defendant Leticia
27  Balceta Sanchez

28
                              19

CERTIFICATION OF DEFENDANT

I have read this agreement in its entirety.  This agreement has been read to me in Tagalog, the language I understand best.  I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with my attorney. I understand the terms of this agreement, and I voluntarily agree to those terms.  I have discussed the evidence with my attorney, and my attorney has advised me of my rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement.  No promises, inducements, or representations of any kind have been made to me other than those contained in this agreement.  No one has threatened or forced me in any way to enter into this agreement.  I am satisfied with the representation of my attorney in this matter, and I am pleading guilty because I am guilty of the charge and wish to take advantage of the promises set forth in this agreement, and not for any other reason.

Leticia B. Sanchez                              4/27/2021
LETICIA BALCETA SANCHEZ                      Date
Defendant


CERTIFICATION OF INTERPRETER

I, Rosalie Sanchez , am fluent in the written and spoken English and Tagalog languages.  I accurately translated this entire agreement from English into Tagalog to defendant LETICIA BALCETA SANCHEZ on this date.

20

1    INTERPRETER                                    April 28, 2021
                                                   Date
2

3                  CERTIFICATION OF DEFENDANT'S ATTORNEY

4        I am LETICIA BALCETA SANCHEZ's attorney.  I have carefully and

5    thoroughly discussed every part of this agreement with my client.

6    Further, I have fully advised my client of her rights, of possible

7    pretrial motions that might be filed, of possible defenses that might

8    be asserted either prior to or at trial, of the sentencing factors

9    set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines

10   provisions, and of the consequences of entering into this agreement.

11   To my knowledge: no promises, inducements, or representations of any

12   kind have been made to my client other than those contained in this

13   agreement; no one has threatened or forced my client in any way to

14   enter into this agreement; my client's decision to enter into this

15   agreement is an informed and voluntary one; and the factual basis set

16   forth in this agreement is sufficient to support my client's entry of

17   a guilty plea pursuant to this agreement.

18                                                  April 28, 2021

19   JENNIFER R. GOLDMAN                            Date
     Attorney for Defendant Leticia
20   Balceta Sanchez

21

22

23

24

25

26

27

28

                                    21